UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| SODEXO OPERATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NOT-FOR-PROFIT HOSPITAL CORPORATION, <br><br> Defendant. |

Civil Action No. 12-108 (CKK)

**MEMORANDUM OPINION AND ORDER**
(September 11, 2017)

Plaintiff Sodexo Operations, LLC ("Plaintiff" or "Sodexo") brings this breach of contract action against Defendant Not-For-Profit Hospital Corporation ("Defendant" or "NFP"), the alleged successor-in-interest to the hospital operated by Capital Medical Center ("CMC"). Plaintiff seeks damages based on allegations of breach of contract between Sodexo and CMC. *See generally* Pl.'s First Am. Compl, ECF No. [35]. Plaintiff's initial complaint was dismissed without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff subsequently requested leave to file an amended complaint, which was granted by this Court. *See Sodexo Operations, LLC. v. Not-For-Profit Hospital Corporation*, 210 F. Supp. 3d 138 (D.D.C. 2016). On September 28, 2016, Plaintiff filed its First Amended Complaint, which includes additional facts in support of its claims of successor liability against NFP. Currently pending before this Court is Defendant's [36] Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted. Upon

1

consideration of the parties' submissions,[1] the relevant legal authorities, and the record as a whole, the Court DENIES without prejudice Defendant's [36] Motion to Dismiss Plaintiff's First Amended Complaint.

## I. BACKGROUND

The following facts are drawn from Sodexo's First Amended Complaint and are not based on any findings of fact made by the Court. On a motion to dismiss, a court must accept as true all well-pleaded factual allegations set forth in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1 (2002). The parties acknowledge that the exhibits and authority accompanying NFP's Motion to Dismiss and Sodexo's Opposition are matters of which the Court can take judicial notice, or are matters of public record; and therefore, this Court may properly consider them without converting the motion to dismiss into a motion for summary judgment. *See Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1222 (D.C. Cir. 1993) ("The district court may, however, examine matters of public record in ruling on a Rule 12(b)(6) motion."); *Duma v. J.P. Morgan Chase*, 828 F. Supp. 2d 83, 85 n.3 (D.D.C. 2011) (noting that courts may take judicial notice of matters of a general public nature without converting a motion to dismiss into one for summary judgment).

---

[1] The Court's consideration has focused on the following documents: Pl's First Am. Compl., ECF No. 35; Def.'s Mot. to Dismiss First Am. Compl. ("Def.'s Mot."), ECF No. 36; Def.'s Mem. of P. & A. in Support of Mot. to Dismiss ("Def.'s Mem."), ECF No. 36-8; Pl.'s Stmt. of P. & A. in Opp'n to Def.'s Mot. to Dismiss First Am. Compl. ("Pl.'s Opp'n"), ECF No. 39; and Def.'s Reply Mem. in support of Mot. to Dismiss First Am. Comp. (Def.'s Reply"), ECF No. 40. The motion is fully briefed and ripe for adjudication. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

A. *Sodexo's Relationship with CMC*

In October 2007, the District of Columbia ('D.C." or "the District") permitted Specialty Hospitals of America ("SHA"), the parent company of Specialty Hospitals of Washington ("SHW"), to acquire the Greater Southeast Community Hospital ("Southeast"), which was later renamed the United Medical Center. *See* Pl.'s First Am. Compl. ¶¶ 7, 8, 10. SHA created two wholly-owned subsidiaries of SHW — Capital Medical Center ("CMC") and Capital Medical Center Realty ("CMCR") — which owned, controlled, and operated the Southeast hospital assets acquired by SHA. *Id.* ¶¶ 8, 9. On April 30, 2008, Sodexo and CMC, doing business as Southeast, entered into a three year management agreement ("Southeast Management Agreement"), commencing on July 28, 2008, whereby the parties agreed that Sodexo had "the exclusive right to manage and operate Services for [CMC's] patients, residents, employees, visitors and guests at the Premises[,]" where "Services" were defined as "Nutrition Services" and the "Premises" was defined as the facility located at 1310 Southern Avenue, SE, Washington, D.C. *Id.* ¶¶ 13, 16, 17, 18. *See also* Pl.'s First Am. Compl., Ex. A (4/30/2008 Southeast Management Agreement) at Articles 1.1, 2.5, 2.6, and 3.1(A).[2]

The terms of the Southeast Management Agreement provided in relevant part that if there was a breach of a material provision, such as failure to make payment when due, the non-breaching party was to notify the breaching party, who then had ten days to remedy the breach. *See* Pl.'s First Am. Compl. ¶¶ 19, 20; Ex. A at Article 3.1(B). If the breach [non-payment] was not rectified within the ten days, the non-breaching party had the right to terminate the

---

[2] Sodexo also entered into a second Management Agreement with CMC, doing business as United, on June 30, 2008, and an Interim Letter Agreement on October 24, 2008. *See* Pl.'s First Am. Compl., Ex. B (6/30/2008 United Management Agreement); Pl.'s First Am. Compl., Ex. C (10/24/2008 Interim Letter Agreement).

Agreement, with the effect that "all outstanding amounts [would] become due and payable" and, if any action or proceeding was brought to enforce the Agreement, the non-breaching party was also entitled to reasonable attorneys' fees. *Id.* ¶¶ 21-23; Ex. A at Articles 3.2 (A), 6.16. On January 26, 2010, Sodexo notified CMC that it owed Sodexo $349,333.81 for work performed under the Southeast Management Agreement, and furthermore, Sodexo intended to proceed with litigation to recover the amount past due, all accruing interest, and the attorneys' fees and costs related to such recovery. *Id.* ¶¶ 38, 43; *see also* Pl.'s First Am. Compl., Ex. D (1/26/2010 letter to CMC from Sodexo) at 1. CMC did not dispute that Sodexo was not paid the past due amount of $349,333.81. *Id.* ¶ 44.

  *B.* *Sodexo's Relationship with NFP*

In July 2010, the District of Columbia purchased United Medical Center for twenty million dollars at a foreclosure sale, and further to the foreclosure, the District created the Not-For-Profit Hospital Corporation ("NFP") to run the foreclosed-upon assets. *Id.* ¶¶ 52, 53, 63; *see* Def.'s Mot. Ex. 1 (July 7, 2010 Not-for-Profit Hospital Corporation Establishment Act). On July 9, 2010, Defendant NFP took over the ownership and operation of the hospital assets that had been owned and controlled by CMC. *Id.* ¶ 12. DC transferred the property to NFP via a mayoral order. *Id.* ¶64; *see* Def.'s Mot. Ex. 2 (July 9, 2010 Mayoral Order).

Prior to the foreclosure, the District "owned 99% of the hospital and all of the working capital funds to operate the hospital had been advanced . . . by DC," and "DC exercised tight fiscal control and DC insisted on a third party management company to supervise" the hospital. *Id.* ¶¶ 55, 57; *see* Pl.'s First Am. Compl., Ex. E (James Rappaport Affidavit) ¶¶ 15, 17.[3] After

---

[3] James Rappaport is Chairman of the Specialty Hospitals of America. Ex. E ¶ 2.

the foreclosure, DC owned 100% of the building and operations of the hospital. Pl.'s First Am. Compl. ¶ 69. In connection with the takeover, the District: 1) maintained the same employees, including the CEO and CRFO, and the same accounts receivable and checking accounts; 2) retained the name "United Medical Center" at the same physical address, and the same goods and equipment; and 3) engaged in an identical business and operated with D.C. funds. *Id.* ¶¶ 65, 66, 69.

In its First Amended Complaint, Sodexo seeks damages from NFP for breach of its contract with CMC, under the theory that NFP is nothing more than a mere continuation of the operations of CMC, and NFP knew it was assuming CMC's financial obligations when it took over operation of the hospital. NFP filed its Motion to Dismiss Sodexo's breach of contract claim, pursuant to Fed. R. Civ. P. 12(b)(6), which is opposed by Sodexo, fully briefed and ripe for decision.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual allegations that, if accepted as true "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require probability but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint may survive even if "recovery is very remote and unlikely" or the veracity of the claims are "doubtful in fact" if the factual matter alleged in

the complaint is "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"In evaluating a 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). However, the court "need not accept inferences drawn by the plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor is the court bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted).

### III. DISCUSSION

Sodexo's sole cause of action in its First Amended Complaint is for breach of contract. NFP acknowledges that Sodexo entered into a contractual relationship with CMC, which was memorialized in April of 2008 as the Southeast Management Agreement, and further, that Plaintiff completed its performance of work under that Agreement in December of 2009. NFP asserts, however, that it is not responsible for CMC's debt because while the Southeast Management Agreement does permit assignment by one party with the written consent of the

6

other party, no such assignment and consent occurred. Sodexo does not contradict NFP's assertion that there was no written assignment but instead propounds two alternative theories for recovery against NFP: 1) that NFP is a mere continuation of CMC; and/or 2) NFP expressly or impliedly assumed CMC's debts. Sodexo relies primarily on the allegations set forth in its First Amended Complaint, Ex. E (Rappaport Affidavit), and Ex. F (6/29/2010 Memorandum from Natwar Gandhi, Chief Financial Officer ("CFO") to The Honorable Vincent C. Gray, Chairman, Council of the District of Columbia, discussing the draft Not-for-Profit Hospital Corporation Establishment Amendment Act of 2010).

### A. *NFP's Reliance on the Plain Language of the NFP Act*

As a preliminary matter, NFP relies on the express language of the Not-for-Profit Hospital Corporation Establishment Amendment Act ("NFP Act") and the Mayoral Order because the NFP Act discusses a transfer of assets but deliberately omits any reference to liabilities. *See Ethyl Corp. v. EPA*, 51 F.3d 1053, 1061 (D.C. Cir. 1995) (discussing the statutory construction principle that the "mention of one thing implies the exclusion of another thing.") NFP contrasts its express assumption of personnel contracts and collective bargaining agreements with its silence on assumption of liabilities.

In response, Sodexo argues that Defendant's interpretation of the NFP Act is contrary to NFP's own actions whereby it expressly assumed many of CMC's debts, continued to pay vendors to operate in the hospital, and also assumed responsibility for tax liabilities. In support of this argument, Sodexho relies on its Ex. E, which discusses the transfer of some financial obligations after DC's foreclosure, and Ex. F, which analyzes the draft NFP Act. NFP challenges Sodexo's reliance on Exs. E and F and urges this Court to instead focus on the plain

and unambiguous language of the NFP Act, the Mayoral Order and the Substitute Trustee's Deed.

For purpose of rebutting a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff need only "suggest a plausible scenario to show that the pleader is entitled to relief[.]" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks and citation omitted). "A court may not grant a motion to dismiss for failure to state a claim 'even if it strikes a savvy judge that . . . recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Sodexo's allegations that NFP assumed some of CMC's debts stand unrebutted, even as NFP maintains that the District's "transfer[] [of] obligations as well as assets is immaterial" because "[n]either the mayoral order nor the [substitute trustee's] deed [specifically] mention any assignment of [CMC's] contracts." Def.'s Reply at 18-19. Accordingly, at this juncture, on the record before this Court, NFP's argument that the plain language of the Mayoral Order and the NFP Act precludes any finding of successor liability and warrants dismissal of Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) must be rejected. This Court finds that the extent to which CMC's obligations may have been acquired by NFP involves the development of the factual record through discovery. The Court now turns to Defendant's argument against Plaintiff's first asserted basis for successor liability; *i.e.*, that NFP is a mere continuation of CMC.

    B.    *NFP as a Mere Continuation of CMC*

A business entity acquiring the assets of another business is ordinarily not liable for its predecessor's liabilities and debts, although there are some recognized exceptions to this rule, including when the successor entity is a "mere continuation" of the predecessor entity. *Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 89-90 (D.C. 1994). In determining

whether one business is a mere continuation of a predecessor, courts may consider: 1) whether there is a "common identity of officers, directors, and stockholders" in the purchasing and selling corporations; 2) "the sufficiency of the consideration" exchanging hands during the sale; 3) whether the predecessor entity "failed to arrange to meet its contractual obligations[;]" and 4) any "continuation of the corporate entity of the seller." *Id.* at 91-92. "[T]he test is whether there is a continuation of the corporate entity of the seller — not whether there is a continuation of the seller's business operation." *Bingham*, 637 A.2d at 92 (quoting *Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 451, 1458, *reh'g denied*, 765 F.2d 154 (11th Cir. 1985)). The parties both agree that *Bingham* sets forth factors demonstrating whether or not a purported successor is continuing the same corporate entity as its predecessor.

Sodexo asserts that it has alleged in its Amended Complaint facts that "satisfy several of the *Bingham* factors[,]" including that: 1) the hospital continued operating under the same trade name —United Medical Center ("UMC") — and at the same physical address; 2) CMC and NFP shared many of the same employees and maintained the same corporate officers; 3) UMC was effectively owned by the District before (99%) and after (100%) the foreclosure, or alternatively, under the control of the District; 4) CMC and NFP had the same funding; 5) CMC and NFP "engaged in the identical business of providing primary hospital care[;]" and 6) CMC "effectively ceased" to exist after the sale of the hospital to the District. Pl.'s Opp'n at 14-15.[4]

NFP challenges the applicability of the mere continuation exception under *Bingham* on grounds that: 1) NFP is not continuing the same corporate entity as CMC; 2) the mere

---

[4] When there is an inconsistency between the page numbers assigned by the party who drafted the document and the page numbers assigned by the Electronic Case Filing ("ECF") system used by the Court, the Court references the ECF page numbers.

continuation exception only applies to a sale; and 3) NFP's purpose in providing not-for-profit medical services differs from CMC's purpose in providing medical services for profit. Each of these arguments will be considered in turn.

   *1.   Continuation of Corporate Entity*

NFP asserts generally that Plaintiff conflates the concept of continuation of business operations with continuation of the same corporate entity, and cautions that the District of Columbia does not recognize a "continuity of enterprise" exception to the general rule of no liability. *Beach TV Properties, Inc. v. Solomon*, Civil Action No. 15-1823, 2016 WL 6068806, at *11 (D.D.C. Oct. 14, 2016); *see also Edwards v. Ocwen Loan Servicing, LLC*, No. 1:13-CV-00709, 2015 WL 9484458, at *10 (D.D.C. Dec. 29, 2015) ("But this evidence shows only that Defendant has successfully incorporated Litton's assets into their company. And that is not enough. Plaintiff has failed to demonstrate that there is a "continuation of the corporate entity of the seller.") (quoting *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 878 F. Supp. 2d 13, 21 (D.D.C. 2012)).

NFP poses three arguments in support of its challenge to any continuation of the corporate entity. First, despite Sodexo's claim that the District "owned" CMC, Plaintiff has recognized that SHA, the parent of SHW, created CMC and CMC Realty as wholly-owned subsidiaries of SHW and further, that the "Southeast hospital assets" were "owned, controlled, and operated by CMC and CMC Realty." First Am. Compl. ¶¶ 8-9. NFP acknowledges that the District was the sole limited partner of the District-SHW Partnership and owned 99%, while the general partner, Specialty Hospitals, owned 1% and managed, operated, and controlled the business, but NFP emphasizes that the District's 99% interest was in the Partnership as opposed to the building and its operations.

10

Second, NFP contends that CMC continued to exist after the foreclosure, as evidenced by the lawsuit brought by CMC against the District, in which CMC was the named beneficiary of a $6 million dollar settlement. "Successor liability is predicated on the fact that the 'predecessor entity is absorbed into the successor and ceases to exist as a viable or functional business' [and accordingly,] the mere continuation exception is inapplicable where 'the predecessor entity remains a viable business concern.'" *Edwards v. Ocwen Loan Servicing*, 2016 WL 0484458, at *9 (quoting *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 1, 10-11 (D.D.C. 2013)).

Finally, NFP asserts that there was a lack of common management between CMC and NFP, with the exception of two former CMC executive level employees who became officers of NFPHC. "[T]he common identity of one or two directors is not sufficient to establish the complete identity of directors, officers, or shareholders" necessary to show mere continuation under *Bingham*. *Estate of Thomas v. Southworth, Inc.,* Civil Action No. 99-712, 2001 WL 36383623, at *7 (D.D.C. Jan. 30, 2001)

Addressing the continuation of the corporate entity issue, Sodexo maintains that the District was always the true owner/operator of CMC and further, "SHA's ownership and operation of that hospital was only to maintain the perception of private ownership and management of [CMC]." First Am. Compl. ¶ 54 (internal quotation marks omitted); *see also* Ex. E (Rappaport Declaration). Prior to the District's foreclosure, D.C. owned 99% of the hospital, and only D.C. funds were used in the operation of the hospital. *Id.* ¶¶ 55-56. "D.C. exercised tight fiscal control and D.C. insisted on a third party management company to supervise" the hospital. *Id.* ¶ 57. After the foreclosure, CMC "cease[d] to exist" as a viable business concern, and NFP was created to "continuously run the foreclosed upon hospital assets," with the following being transferred to NFP: checking accounts; the name United Medical Center; the

services of all employees, including the CEO and CRFO; all accounts receivable; certain accounts payable and IRA and Keogh contributions that had been with third parties. First Am. Compl. ¶¶ 63, 65, 67; Ex. E. Furthermore, "the District prevented the Specialty Entities from remov[ing] the goods and equipment from their facilities following their eviction from the UMC campus. . . SHA and SHW were informed that they would be unable to remove their equipment from the facility . . . ." *Id.* ¶ 66 (internal quotation marks omitted).

Sodexo acknowledges that CMC did, technically, exist on paper after the foreclosure, but asserts that it was not a viable business concern. Sodexo contends that CNC's only continued existence was that of a paper shell company, which was used by Specialty Hospital operators as a vehicle to sue and be sued, for the purpose of avoiding liability and debts. Sodexo asserts that NFP overlooks that the District became the sole partner in the Partnership, assumed possession of all assets, and foreclosed on the entire hospital, which includes the land, operations, assets and liabilities.

In this case, NFP has not demonstrated that Sodexo's claim that NFP is a mere continuation of CMC is futile because it is based on a theory of continuation of business operations versus continuation of the corporate entity. The Court notes that Sodexo has made numerous allegations in its First Amended Complaint regarding D.C.'s control of CMC before and after the foreclosure and the ways in which NFP continued the existence of CMC, and Sodexo has proffered the Rappaport Declaration to try to bolster these allegations. Under the applicable legal standard for deciding a motion to dismiss, the Court must construe the Complaint in favor of Sodexo and as such, the Court finds Sodexo's theory of continuation of corporate entity to be "plausible" enough to warrant denying the motion to dismiss on this grounds.

*2. Requirement of a Sale*

NFP asserts that D.C. law is clear that under the "mere continuation" exception, successor liability cannot be imposed where there has been no sale of assets to the entity which will be charged with contractual liability. *See Alkanani v. Aegis Defense Services, LLC,* 976 F. Supp. 2d 1, 11 (D.D.C. 2013) (mere continuation exception did not apply, in part because "there was no sale of assets between Aegis UK and Aegis LLC as is required by the general rule"); *Sodexo Operations, LLC v. Not-for-Profit Hospital Corp.*, 930 F. Supp. 2d 234, 239 (D.D.C. 2013); *Direct Supply, Inc. v. Specialty Hosp. of America, LLC*, 878 F. Supp. 2d 13, 21 (D.D.C. 2012). *But see Jackson v. George*, 146 A.3d 405, 415-16 (D.C. 2016) (holding that successor liability can attach in the absence of a sale so long as there exists a continuation of the same corporate entity and the successor controls the assets of the predecessor.) NFP contends that the hospital assets were not <u>bought</u> or <u>sold</u> in any way but instead were transferred to NFP through special legislation and a Mayoral Order. This contention glosses over the fact that the hospital assets owned and operated by CMC were foreclosed upon by the District, which purchased UMC for twenty million dollars at a foreclosure sale, and NFP was subsequently created to take over the ownership and operation of those hospital assets. First Am. Complaint ¶¶ 12, 52-53, 64.

Sodexo counters that other jurisdictions have found that it is substance as opposed to form that matters when determining successor liability. *See, e.g., Ed Peters Jewelry Co. v. C & J Jewelry Co., Inc.*, 124 F.3d 252, 267 (1st Cir. 1997) ("[E]xisting case law overwhelmingly confirms that an intervening foreclosure sale affords an acquiring corporation no automatic exemption from successor liability."); *Stoumbos v. Kilimnik*, 988 F.2d 949, 962 (9th Cir. 1993)

("The mere fact that the transfer of assets involved foreclosure on a security interest will not insulate a successor corporation from liability where other facts point to continuation."); *Ordonez v Akorat Metal Fabricators, Inc*., No. 10 C 5708, 2011 WL 6379290, at *3 (N.D. Ill. Dec. 20, 2011) (rejecting the defendant's argument that "it would simply be unfair to impose successor liability here because it was a bona fide purchaser of the Wisconsin Tool defendants' assets in a foreclosure sale"); *John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.*, *Inc.*, 266 F. Supp. 2d 208, 222 (D. Mass. 2003) ("[I]t is worth noting that an intervening foreclosure sale does not afford an acquiring corporation such as Harrier protection from successor liability.")[5] Sodexo concludes that "NFP's attempt to recast Sodexo's allegations by elevating form over substance should be rejected." Pl.'s Opp'n at 22.

The Court finds inconclusive NFP's assertion that the requirement of a "sale" has not been met in this case for purposes of establishing "mere continuation" based successor liability, taking into account the foreclosure sale to the District, followed by the creation of NFP, and the wealth of caselaw from other jurisdictions indicating that a foreclosure sale may be construed as a sale. The Court further notes that the *Jackson* decision indicates that a sale may not be a prerequisite to mere continuation liability, and accordingly, NFP's motion to dismiss on this grounds should be denied.

    3.    *CMC's and NFP's Purpose*

NFP asserts that, under *Bingham*, the court applied a "purpose-based test to the determination of continuity of corporate enterprise" with the effect that there is no finding of continuation "where the purpose of the successor entity is separate and distinct from that of the

---

[5] NFP asserts that "in virtually every single one of these cases cited by Sodexo, "the predecessor entity had common ownership with the alleged successor entity." Def.'s Reply at 15.

predecessor entity." Def.'s Mem. at 20. NFP contends that the difference in purpose between CMC and NFP is demonstrable because CMC operates as a for-profit entity composed of for-profit entities while NFP operates as a not-for-profit governmental instrumentality, subject to governmental oversight.[6] NFP concludes that these differences reveal such a fundamental shift in the purpose of NFP, as compared to the purpose of CMC, so as to exclude any idea of continuity.

Sodexo argues however that this is purely semantic because in reality, "the purpose of the business operations of CMC and now NFP, have remained the same: to maintain a hospital and provide medical services for the community within the Greater Southeast quadrant of the city." Pl's. Opp'n at 22. In support of this statement, Sodexo cites D.C. Law 16-288 – Community Access to Health Care Omnibus Amendment Act of 2006, a press release from Mayor Adrian Fenty, a memorandum from Natwar M. Gandhi (Ex. F), and the NFP Act, which together bolster Sodexo's assertion that the focus of both CMC and NFP is to provide health services for D.C. residents living east of Anacostia, in southeast and northeast D.C. This Court finds that Sodexo has pled sufficient facts to demonstrate that CMC and NFP have the same purpose despite the fact that CMC is a for-profit enterprise and NFP is not, and thus, the Motion to Dismiss should be denied with regard to this purpose-based argument by NFP.

---

[6] In addressing the motion to dismiss the [original] complaint in the instant action, United States District Judge Richard W. Roberts concluded that "there is no continuation of the corporate entity of the seller because CMC was a privately owned corporation . . . while NFP is a non-profit corporation created by and separate from the District." *Sodexo Operations, LLC v. Not-Fr-Profit Hosp. Corp.*, 930 F. Supp. 2d 234, 239 (D.D.C. 2013).

### C. *Express or Implied Assumption of Liability by NFP*

A successor company may be held liable for the debts of its predecessor if it "expressly or impliedly agrees to assume debts." *Debnam v. Crane Co.*, 976 A.2d 193, 197 n. 3 (D.C. 2009). *See also Bingham*, 637 A.2d at 89 ("Liability will be imposed on the successor entity when [ ] the buyer expressly or impliedly agrees to assume such debts.") An implied agreement to assume debts turns on the intent of the buyer, which is dependent on the facts and circumstances of the case. *Baltimore Luggage Co. v. Holtzman*, 562 A.2d 1286 (Md. Ct. Spec. App. 1989).

Sodexo argues that determining the intent of substitute trustee in the instant case is a factual inquiry grounded in contract law principles. *See Brown v. Union Station Venture Corp. No. P-5*, 727 A.2d 878, 881 (D.C. 1999) (if evidence of the parties' intent is required to interpret a contract, a question of fact is presented). In this case, the Mayoral Order transferred "[t]he Hospital Property and all other existing rights and obligations" under the substitute trustee's deed to NFP, and the substitute trustee's deed transferred "all cash, funds, deposit accounts and other evidence of rights to cash, all leases, licenses and such other goods and chattels and personal property owned by [the] Borrower" subject to relevant "liens, leases, encumbrances, reservations, covenants, conditions, easements and restrictions." Pl.'s Opp'n at 24 (citation omitted).

Sodexo contends further that the Exhibits E and F, attached to its Amended Complaint, raise issues of material fact. Exhibit E, the Rappaport Declaration, discusses the chronology of events leading up to the foreclosure of CMC and the District's continuing payments to various vendors, doctors and nurses while other vendors (such as Sodexo) did not receive payment; and Exhibit F, the memorandum from Natwar Gandhi to Vincent Gray, discusses the fiscal impact

statement of the NFP Act, and expresses concerns about, *inter alia*, the assumption of UMC's liabilities.

NFP asserts that Plaintiff "still has not alleged any action by NFP to expressly assume CMC's debt" despite Sodexo's reliance on Exhibits E and F, particularly as Exhibit F, which comments on "concerns," is not an express assumption by NFP of CMC's debts and liabilities. "[T]he manifestations of aspirational intent expressed in the DC memorandum are those of the District and not of NFPHC." Def.'s Reply at 19. Defendant explains further that NFP did not even exist at the time that this Fiscal Impact Statement was drafted nor had the foreclosure taken place or the Mayoral Order yet been signed. NFP challenges Sodexo's Rappaport Affidavit (Exhibit E) on grounds that the statements therein are conclusory and speculative, and they include Mr. Rappaport's own conclusions about the legal effect of the foreclosure and Mayoral Order. Such statements are not the factual allegations that "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 545. NFP argues that even if the Rappaport statements are true, they do not demonstrate a plausible basis to find that NFP expressly assumed CMC's debts and liabilities.

NFP contends that "the Southeast Management Agreement dictates the only manner in which it can be assigned" insofar as it states that it "may not be assigned by either party without the written consent of the other party" where assignment includes a "transfer of all or substantially all of the assets" of CMC. Def.'s Mem. at 23 (citation omitted). NFP emphasizes that because there is no allegation that Plaintiff and CMC agreed in writing to have the Agreement assigned to NFP, any purported assignment would be invalid. NFP further alleges that Sodexo's arguments regarding implied assumption fail for the same reasons as its arguments regarding express assumption. *See Direct Supply v Specialty Hospitals of Am., LLC*, 878 F.

Supp. 2d 13, 21 (D.D.C. 2012) ("Three factors determine whether a corporation has implicitly assumed the debts of its predecessor: (1) whether the successor's conduct indicated an intention to assume the debt; (2) whether the creditor relied on the conduct and the effect of any reliance; and (3) whether the successor's representatives admitted liability.") NFP claims that because there is no allegation of an intention to assume the debt, there can be no detrimental reliance, and thus the test for implied assumption of liability is not met.

In the instant case, Sodexo relies on the Rappaport Affidavit to show that there is at least a material question of fact as to whether NFP assumed CMC's debts, and further alleges that a determination of intent is not appropriate at the pleadings stage of a legal proceeding. While NFP characterizes the Rappaport Affidavit as conclusory and speculative, on a motion to dismiss the plaintiff must be granted the benefit of all inferences that can be derived from facts alleged, and the plaintiff need only make a claim for relief that is plausible on its face. The Court finds that because Sodexo's claim of assumption of liability is at least plausible, NFP's motion to dismiss this claim should be denied. For the sake of judicial efficiency, the Court has considered express and implied assumption of liability together because proof of <u>any</u> assumption of liability will hinge on the same type of discovery.[7] Accordingly, the Court leaves standing at this time both of Sodexo's claims for assumption of liability.

After considering the parties' arguments, the Court concludes that Sodexo's First Amended Complaint contains sufficient factual allegations which, if accepted as true, state a

---

[7] The Court notes however that Sodexo's argument for a finding of express assumption of liability is thin, particularly in light of NFP's aforementioned reliance on the "anti-assignment clause" in Ex. A (Southeast Management Agreement).

plausible claim for relief, which is enough to defeat NFP's motion to dismiss. In reaching this conclusion, the Court expresses no other opinion on the validity of Sodexo's claims.

## IV. CONCLUSION

For the foregoing reasons, it is this 12th day of September, 2017, hereby

**ORDERED** that Not-For-Profit Hospital Corporation's [36] Motion to Dismiss Plaintiff's First Amended Complaint is DENIED without prejudice.

                        _____/s/_____
                        COLLEEN KOLLAR-KOTELLY
                        United States District Judge